**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| DANA A.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )   Civil No. 3:22-cv-00807-DJN-SLS |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of the | ) |
| Social Security Administration,[2] | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## REPORT AND RECOMMENDATION

In this action, Plaintiff Dana A. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 10, 14.) The motions have been fully briefed (ECF Nos. 10, 11, 14, 15), rendering this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Brief in Support of Motion for Summary Judgment (ECF No. 11) ("Pl.'s Mem.") at 21.) As the basis for such relief, Plaintiff argues that: (1) the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") failed to properly address Plaintiff's alleged intellectual disability in accordance with the regulations (Pl.'s Mem. at 12-17); and (2) the ALJ failed to properly evaluate the medical opinions of Douglas Wayne, M.D. ("Dr. Wayne") and George Brengel, M.D. ("Dr. Brengel"), thus rendering the residual functional capacity ("RFC") findings improper (Pl.'s Mem. at 17-21).  In response, the Commissioner argues that the ALJ's decisions on these matters complied with application regulations, are supported by substantial evidence, and should be affirmed.  (Defendant's Motion for Summary Judgment and Brief in Support (ECF No. 14) ("Def.'s Mem.") at 16-24.)

For the reasons set forth below, this Court finds that: (1) the ALJ reasonably concluded that Plaintiff's mental impairments did not meet a listing; (2) the ALJ properly assessed the medical opinion evidence in accordance with the regulations; and (3) substantial evidence supports the ALJ's determinations.  Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and SSI on July 24, 2020 and July 31, 2020 respectively.  (Administrative Record ("R.") at 147, 158.)[3]  She alleged disability beginning September 18, 2015, claiming that she suffered from a learning disability, herniated disk, diabetes, depression, feet problems, sleep apnea, lymphedema, high blood pressure, and high

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

cholesterol.  (R. at 137, 279.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 16, 147, 158, 171, 184.)  Plaintiff requested a hearing before an ALJ, and one was held on February 18, 2022.  (R. at 92-114, 211-13.)

On March 3, 2022, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Social Security Act ("the Act").  (R. at 16-37.)  On October 26, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (R. at 1-4.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration

requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given the claimant's RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude him or her from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock,* 667 F.3d at 472. If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE"). *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence

standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 16-31.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 18, 2015 (the alleged onset date). (R. at 19.) Plaintiff works part-time at McDonald's, but the ALJ found this insufficient to meet the standard of substantial gainful activity. (R. at 19.) This finding is not contested at the current level of review.

At step two, the ALJ determined Plaintiff suffered from the following severe impairments: disorders of the skeletal spine; osteoarthrosis and allied disorders; diabetes mellitus; other diseases of the circulatory system (venous insufficiency); obesity; learning disorder; depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; and trauma- and stressor-related disorders.  (R. at 19-20.)

At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 20-24.)  Pertinent to this action, the ALJ found:

> The severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.11, and 12.15.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.

(R. at 22.)  The ALJ then determined Plaintiff's limitations as moderate, mild, or none, and supported those findings as follows:

- Mild limitation in understanding, remembering or applying information (R. at 22): The ALJ acknowledged evidence showing Plaintiff had "borderline to low average verbal comprehension skills," an "inability to mentally perform a monetary transaction or solve word problems involving greater than single digit operations," some "problems with memory, understanding, following instructions, and the need for reminders to take medications."  (R. at 22.)  But the record also demonstrated that Plaintiff possessed an understanding of basic numerical concepts, could independently manage funds, work part-time at McDonalds, recall her medical and mental health history, and perform personal and household tasks "which require at least a basic level of understanding, remembering, and applying information."  (R. at 22.)  In addition, the medical record "show[ed] no serious deficits in memory, insight, and judgment."  (R. at 22.)

- No limitation in interacting with others (R. at 22): While adult function reports noted that Plaintiff had difficulty getting along with others, other evidence showed no limitations in this category.  (R. at 22-23.)  Specifically, a psychological consultative examiner found Plaintiff cooperative and able to appropriately interact with others, and medical records showed Plaintiff interacted normally with her health care providers without serious deficiencies in speech or conversation and with good eye contact.  (R. at 22-23.)  Plaintiff also lived with her daughter, interacted with family, worked a part-time job, and was able

to shop at stores, attend church, talk and text on the phone, and eat at restaurants.  (R. at 23.)

- Moderate limitation in concentrating, persisting, or maintaining pace (R. at 23): A psychological consultative examiner and adult function reports noted Plaintiff's difficulties with concentration and attention skills.  (R. at 23.)  However, they also reported Plaintiff's ability to perform simple repetitive tasks and household chores.  (R. at 23.)  Plaintiff "further testified to working part-time as a cashier at McDonald's drive-through, having a driver's license, driving 4-5 times a week, being able to read and write, showering, watching TV, preparing meals, performing personal care, washing dishes, doing laundry, using a Swiffer, vacuuming, paying bills, and making bracelets, which requires some concentration and persistence."  (R. at 23.)

- No limitations in adapting or managing oneself (R. at 23):  While Plaintiff reported needing reminders to take her medicine and help performing housework/chores, paying bills, and balancing her checkbook, other evidence showed Plaintiff "managing finances independently, having good hygiene and grooming, . . . having fair insight and judgment," "handl[ing] mental demands of parenting, although it caused some stress," "independently making plans and setting goals," and otherwise "handl[ing] many of her own activities of daily living without significant assistance from others."  (R. at 23-24.)

Therefore, the ALJ found that Plaintiff failed to satisfy the "paragraph B" criteria because her "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation." (R. at 24.)

The ALJ then determined Plaintiff's RFC.  (R. at 24-29.)  Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations:

[Plaintiff] can frequently balance and climb ramps and stairs; and occasionally stoop, kneel, crouch, crawl and climb ladders, ropes, or scaffolds. [Plaintiff] is able to maintain concentration and persistence to perform unskilled work at a nonproduction pace (i.e., assembly line) in two-hour increments in order to complete an eight-hour day.

(R. at 24.)  The portions of the ALJ's decision which supports and explains the RFC finding spans over 10 pages.  (R. at 24-35.)

The ALJ explained that she determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. at 24.) The ALJ acknowledged Plaintiff's testimony as to her symptoms, including that she: (1) could not work a full-time job because of a herniated disc and back pain; (2) lies down every day for around four hours; and (3) makes mistakes at her current job due to alleged comprehension, concentration, and understanding difficulties. (R. at 25.) The ALJ also noted that the record showed Plaintiff could work part-time as a cashier at McDonald's, drive 4-5 times a week, shop at stores, attend church, attend medical appointments, shower, watch TV, perform household chores, pay bills, and make bracelets. (R. at 25.)

The ALJ next summarized Plaintiff's medical records from October 2015 to January 2022 in detail. (R. at 25-28.) Psychiatric examinations remained unremarkable until October 2021, when Plaintiff reported "symptoms of anxiousness, disappointment, frustration, sadness, low self-esteem, difficulty maintaining relationships, and [a] high dependence on her elderly father who assists with paying bill and scheduling/attending provider appointments." (R. at 26-28.) A mental status examination showed below average intellectual functioning. (R. at 28.) At the same time, Plaintiff reported working two days a week at McDonalds, running errands, spending time with her daughter, and making arts and crafts. (R. at 28.) Thereafter, psychiatric and mental examinations remained unremarkable. (R. at 28.) Therefore, while examination revealed below average intellectual functioning, progress notes otherwise showed Plaintiff's "alertness, orientation, cooperativeness, intact associations, and normal behavior, speech, language, mood, affect, cognition, thought content, fund of knowledge, memory, insight, and judgment." (R. at 28.)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (R. at 24.) The ALJ began by acknowledging the prior ALJ decision from 2015. (R. at 28.) The ALJ found

this previous decision generally persuasive, as it was "supported by the evidence presented at the time" but has decreased in value due to the passage of time.  (R. at 29.)  The ALJ found that the "evidence at the current hearing level depicts lesser limitations due to new and material evidence of improvement despite additional impairments of osteoarthrosis and allied disorders, other diseases of the circulatory system (venous insufficiency), anxiety and obsessive-compulsive disorders, and PTSD, and thereby adjust[ed Plaintiff's] limitations" accordingly.  (R. at 29.)

The ALJ considered the opinions of Drs. Brengel and Wayne and found them unpersuasive. (R. at 29.)  Plaintiff challenges the ALJ's assessment of these opinions as improper under the regulations and not supported by substantial evidence.  (Pl.'s Mem. at 1.)  Dr. Brengel's mental capacity assessment provided for marked limitations in multiple areas and an extreme limitation in another.  (R. at 29.)  Dr. Wayne completed a physical assessment form "indicating a restrictive less than sedentary [RFC]."  (R. at 29.)  The ALJ found these opinions unsupported and inconsistent with the evidence, including other opinion evidence and Plaintiff's reported activities of daily living.  (R. at 29.)

The ALJ then considered the medical opinions of Paul Candido, Ph.D. ("Dr. Candido"), Jo McClain, Psy.D. ("Dr. McClain"), Gene Godwin, M.D. ("Dr. Godwin"), William Humphries, Jr., M.D. ("Dr. Humphries"), Penny L. Sprecher ("Dr. Sprecher"), Howard Leizer, Ph.D. ("Dr. Leizer"), Justin Dumont, D.O., and Tara Gallagher, L.P.C.  (R. at 29-33).  Plaintiff does not challenge the ALJ's assessment of these medical opinions.  However, the Court discusses these opinions and their persuasiveness as determined by the ALJ to the extent relevant to the issues raised by the Plaintiff in this action.

Dr. Candido, a physiological consultative examiner, opined that Plaintiff had a "moderate deficit in attention and concentration," but had "adequate skills to perform simple and repetitive

tasks similar to her current part-time job at McDonalds." (R. at 30.) He further reported that Plaintiff "demonstrates the cognitive ability and organization to maintain regular attendance in the workplace," although she "would likely require greater than usual supervised training to achieve mastery of even simple and repetitive tasks." (R. at 30.) Dr. Candido determined that Plaintiff had "no reported history of inappropriate interactions and she has been able to deal effectively with work-related stresses at her pervious and current work placement." (R. at 30.) Dr. Candido also noted that Plaintiff's "subjective experiences . . . seem contradictory and excessively severe in light of her daily activities." (R. at 30.) After analyzing Dr. Candido's assessment, Plaintiff's activities, and mental status examinations, the ALJ found the opinion of Dr. Candido to be generally persuasive, as it was supported by his observations, tests, findings, and examinations and consistent with the evidence showing Plaintiff had a moderate limitation in her ability to concentrate. (R. at 29-30.)

Dr. McClain, a state agency psychological consultant, determined that Plaintiff had mild limitations in understanding, remembering, or applying information; no limitation in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and no limitations for adapting or managing oneself. (R. at 30.) The ALJ found this opinion generally persuasive because it was supported by Dr. McClain's review of the evidence of depression and related symptoms and consistent with the evidence showing Plaintiff had no more than moderate limitations in performing unskilled work with certain noted limitations. (R. at 30.)

Dr. Godwin, a state agency medical consultant, determined Plaintiff had the RFC "to perform work related activities at a light level of exertion." (R. at 32.) Specifically, Dr. Godwin opined Plaintiff "could lift and/or carry 20 pounds occasionally and 10 pounds frequently and stand and walk for about six hours total and sit for about six hours total in an eight-hour workday." (R.

at 32.)  Another state agency medical consultant, Dr. Humphries, affirmed the findings of Dr.

Godwin.  (R. at 32.)  The ALJ found these opinions somewhat persuasive, but arrived at greater

physical limitations in the RFC based on additional evidence presented at the hearing.  (R. at 30.)

Dr. Sprecher provided a consultative examination report listing Plaintiff's subjective

complaints about lacking attention to detail, making careless errors, failing to sustain attention,

and avoiding tasks, among others.  (R. at 30-31.)  Dr. Sprecher also indicated that Plaintiff "has

significant sub-average general intellectual functioning currently manifested by an inability to

participate in standardized testing of intellectual functioning and significant deficits in adaptive

functioning currently manifested by dependence upon others for personal needs."  (R. at 31.)  At

the same time, Dr. Sprecher reported Plaintiff working at McDonald's, having no issues getting

along with peers, and enjoying walking, badminton, and crafts.  (R. at 31.)  The ALJ found the

opinion of Dr. Sprecher to be unpersuasive, noting it was based mainly on Plaintiff's subjective

complaints, overly restrictive, and unsupported by Dr. Sprecher's own clinical findings.  (R. at

31.)  The ALJ noted Plaintiff's current employment, her past 15 years of employment in food

service, and her normal activities of daily living, as well as other persuasive opinion evidence from

the consultative examiner and the initial state agency psychological consultant, as contradicting

evidence.  (R. at 31.)

Overall, in arriving at the RFC, the ALJ found:

[Plaintiff's] subjective symptoms do not correlate with the objective findings in the
medical evidence of record.  Generally, the objective record, including the activities
[Plaintiff] reports she engages in to healthcare providers, would support that
[Plaintiff] could perform within the limitations of the residual functional capacity
issued hereinabove. . . .   Although limited to a degree in her daily living activities
as a result of her impairments, the daily activities that [Plaintiff] does perform are
inconsistent with her complaints of prolonged and consistent disabling functional
limitations.  In fact, the record and objective medical evidence reflects [Plaintiff's]
limitations mildly restrict her daily activities.  Likewise, [Plaintiff] continues to

> perform normal activities of daily living per hearing testimony, adult function reports, and the medical evidence of record.

(R. at 33-34.)  Those activities included, among others, performing independent personal care, preparing simple meals, completing household chores and cleaning, running errands, shopping, talking and visiting with friends and family, driving four to five times a week, attending church, making bracelets, and paying bills.  (R. at 34.)  The ALJ found such activities "inconsistent with disability."  (R. at 34.)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors.  She found that Plaintiff was able to perform her past relevant work as a fast-food worker (drive-thru cashier).  (R. at 35.)  The ALJ found that "this work does not require the performance of work related activities precluded by [Plaintiff's RFC]."  (R. at 35.)

Under 20 C.F.R. § 404.1520(e), if Plaintiff can perform her past relevant work, then the inquiry ends at step four.  Thus, the ALJ was not required to analyze whether there were other jobs in significant national numbers that Plaintiff could perform.  Nonetheless, the ALJ also adopted the VE's testimony that Plaintiff could perform the occupations of cafeteria attendant, ticket taker, and inspector and hand packager.  (R. at 35-36.)  The ALJ concluded that Plaintiff has not been under a disability from September 18, 2015 through the date of decision.  (R. at 36.)

## IV.   ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence.  *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340).  "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).  Consequently, as long as the judgment is

explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, this Court finds that the ALJ properly considered Plaintiff's intellectual disability with respect to the listings, properly assessed the medical opinion evidence in accordance with the regulations, and substantial evidence supports the ALJ's determinations.

### A. The ALJ Reasonably Concluded that Plaintiff's Mental Impairments Did Not Meet the Criteria of a Mental Listing, and Substantial Evidence Supports Her Finding

Plaintiff first argues that the record established that she met the requirements of Listing 12.05.B and that the ALJ erred in concluding otherwise.  (Pl.'s Mem. at 12.)  Specifically, Plaintiff contends the ALJ erred by failing to cite 12.05 and by failing to find marked limitations in two or more mental functioning areas.  (Pl.'s Mem. at 13-17.)  Plaintiff also "suggests that the ALJ may have applied the wrong standard" because the ALJ referenced criteria under § 12.05.A when weighing medical opinion evidence.  (Pl.'s Mem. at 15 (quoting R. at 31).)  The Court finds no error for the reasons discussed below.

The listings define impairments that would prevent an individual from performing any gainful activity, not just substantial gainful activity.  *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  The listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof.  *Id.* at 530-32.  "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely,

does not qualify." *Id.* at 530.  Plaintiff bears the burden of proving that she meets or equals a listing.  *See Hancock*, 667 F.3d at 472.

To meet the requirements of Listing 12.05.B, titled Intellectual disorder, Plaintiff must show, in relevant part: (1) "[a] full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence;" and (2) a "[s]ignificant deficient in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two" areas of mental functioning, including understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself; and (3) "that the disorder began prior to [Plaintiff's] attainment of age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.B.

Here, while the ALJ did not cite § 12.05, she considered the listing criteria for other sections that mirror those for § 12.05.B.  (R. at 22-24.)  The ALJ found that the "severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.11, and 12.15."  (R. at 22.)  The ALJ explained this finding with an analysis of the "paragraph B" criteria for those listings, which again track those under § 12.05.B, and included references to the record that support her findings.  (R. at 22-24.)  The ALJ concluded that Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, and therefore Plaintiff failed to meet the "paragraph B" criteria.  (R. at 24.)  Although the ALJ does not explicitly reference § 12.05.B, she fully considered the criteria thereunder and substantial evidence supports the ALJ's findings, making remand not warranted.

In arguing otherwise, Plaintiff relies on *Devonta P. v. Kijakazi*, 2021 WL 3375540 (D.S.C. July 19, 2021), *report and recommendation adopted*, 2021 WL 3375510 (D.S.C. Aug. 3, 2021).

(Pl.'s Mem. at 14.)  The Court finds this case distinguishable.  In *Devonta P.*, the ALJ improperly

concluded that the claimant did not meet the requirements of § 12.05.B by conflating the criteria

under § 12.05.A with those of § 12.05.B.  *Devonta P.*, 2021 WL 3375540, at *14.  Here, on the

other hand, the ALJ properly analyzed "paragraph B" criteria in connection with her finding that

Plaintiff did not meet a listing.  (R. at 22-24.)  This is true regardless of whether the ALJ later

referenced "paragraph A" criteria in considering the persuasiveness of a medical opinion.

     Plaintiff also relies upon the Fourth Circuit's decision of *Radford v. Colvin*, 734 F.3d 288

(4th Cir. 2013).  (Pl.'s Mem. at 16.)  In *Radford*, the ALJ supported his opinion by stating that he

had "considered, in particular" the listing requirements and that state medical examiners concluded

that "no listing [was] met or equaled."  734 F.3d at 295.  The Fourth Circuit found the ALJ's

"summar[y] conclusions" insufficient, as they impeded meaningful review.  *Id.*  The Court also

finds this case distinguishable.  Here, the ALJ provided a detailed analysis and discussion under

step three, far from what the Court would describe as a "summary."  (R. at 20-24.)  The ALJ

outlined Plaintiff's medical records and history, personal testimony, reported daily activities, and

discussed multiple medical opinions to determine whether Plaintiff met the listings.  (R. at 20-24.)

This allows for meaningful judicial review.

     The Court finds other authority in the Fourth Circuit more persuasive.  As the Fourth

Circuit has recognized:

> There is no requirement . . . that the ALJ provide an exhaustive point-by-point
> breakdown of each and every listed impairment.  Rather, the ALJ is compelled to
> provide a coherent basis for his step-three determination.  We must read the ALJ's
> decision as a whole.  Indeed, courts have determined that an ALJ's step-three
> conclusion that the claimant did not meet the listing at issue can be upheld based
> on the ALJ's findings at subsequent steps in the analysis.

*Keene v. Berryhill*, 732 F. App'x. 174, 177 (4th Cir. 2018) (citing *Fischer–Ross v. Barnhart*, 431

F.3d 729, 734 (10th Cir. 2005)).  In *Keene*, the claimant argued that the ALJ failed to analyze

Listing 1.02.A, and instead only considered 1.02, among others.  *Id.* at 176.  However, "the justification provided by the ALJ – albeit somewhat sparse – was sufficient to allow [the Court] to determine that the ALJ performed an adequate review of the whole record and that the decision [was] supported by substantial evidence."  *Id.*  In that case, the Fourth Circuit found it improper for the reviewing court to substitute its judgment for the ALJ.  *Id.* at 177.  Here, too, in reading the ALJ's decision as a whole, her analysis of "paragraph B" criteria applies equally to § 12.05.B and allows for meaningful judicial review of the ALJ's determinations.

As another example, in *Maravel v. Saul*, the United States District Court for the Middle District of North Carolina dealt with a similar situation as presented here.  2021 WL 1751936 (M.D.N.C. May 4, 2021), *report and recommendation adopted* 2021 WL 18779408 (M.D.N.C. June 2, 2021), *aff'd sub nom. Maravel v. Kijakazi*, 2023 WL 1879408 (4th Cir. Feb. 10, 2023).  The ALJ failed to cite Listing 12.06, but analyzed the same "paragraph B" criteria under Listing 12.15.  *Id.* at *12.  The *Maravel* court found no error in the ALJ's listing findings.  *Id.*  In doing so, the court acknowledged that there is "'[n]o principle of administrative law or common sense [that] requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.'"  The *Maravel* court found the analysis for the mentioned listing sufficient to apply to the unmentioned listing.  *Id.* (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).  Similarly, in this matter, the ALJ sufficiently analyzed the "paragraph B" criteria that would apply under § 12.05, and thus applied the proper legal standards.[4]

Plaintiff next challenges the ALJ's specific findings regarding the level of limitation applicable to areas of mental functioning.  Specifically, Plaintiff contends the ALJ erred in failing

_____

[4] Even if the ALJ's failure to cite § 12.05.B constituted error, it would be harmless error.  *Maravel*, 2021 WL 1751936, at *12.  As discussed above, the ALJ's decision provides a detailed and

to find marked limitations in two such areas.  The ALJ determined that Plaintiff had a mild limitation in understanding, remembering, or applying information, contrary to Plaintiff's assertion that it was a marked limitation.  (R. at 22; Pl.'s Mem. at 13.)  The ALJ noted that medical evidence generally showed no serious deficits in memory or insight.  (R. at 22.)  While acknowledging that adult function reports noted issues with memory, understanding, or following instructions, the ALJ found these reports less persuasive when combined with her reported daily activities.  (R. at 22.)  Indeed, the evidence showed Plaintiff "performing independent personal care, preparing simple meals, washing dishes, doing housework, cleaning, vacuuming, doing laundry, making bracelets, paying bills, driving, shopping by mail, and working part-time."  (R. at 22 (internal record citations omitted).)  The ALJ further noted Dr. Candido's findings that Plaintiff had "understanding of basic numerical concepts," could independently manage funds, and was working a part-time job at McDonald's.  (R. at 22, 30.)  Thus, substantial evidence supports the ALJ's finding as to the level of limitation in this area.

Plaintiff also argues that her marked ability to concentrate found support in the reports of Drs. Brengel, Wayne, and Sprecher.  (Pl.'s Mem. at 13.)  Specifically, Dr. Brengel noted Plaintiff had trouble ignoring or avoiding distractions at work, Dr. Wayne found that Plaintiff often could not maintain attention or concentration needed to perform simple work-related tasks, and Dr. Sprecher opined that Plaintiff's concentration was slow and her distractibility was high.  (Pl.'s Mem. at 13.)  On the other hand, the ALJ found Plaintiff's limitation in concentration to be moderate.  (R. at 23.)  The ALJ acknowledged Plaintiff's issues with concentration and attention, but also noted that Plaintiff has no trouble completing a multitude of daily activities which include

---

thorough discussion of the paragraph B criteria application under § 12.05.B, makes findings on those criteria, and is supported by substantial evidence.

simple repetitive tasks, as well as working part-time at McDonald's.  (R. at 23.)  The ALJ found that Plaintiff did not complain about her inability to remain on task, and that "[m]ental status and psychiatric examination results showed [Plaintiff] had no serious problems."  (R. at 23.)

Although Plaintiff disagrees with the degree of limitations found by the ALJ, the Court finds that substantial evidence supports the ALJ's findings of no extreme or marked limitations in the areas of mental functioning, and the Court declines Plaintiff's invitation to reweigh the evidence thoroughly considered by the ALJ.

### B. The ALJ Applied Correct Legal Standards in Evaluating Dr. Wayne's and Dr. Brengel's Opinions and Substantial Evidence Supports the ALJ's Determinations

Plaintiff next argues that the RFC determination lacks support by substantial evidence because the ALJ improperly rejected Dr. Wayne's and Dr. Brengel's opinion evidence.  (Pl.'s Mem. at 18-20.)  Specifically, Plaintiff argues that the ALJ failed to explain the factors of supportability and consistency.  (Pl.'s Mem. at 19.)  Plaintiff states that the ALJ "superficially addressed the factor of consistency when she called [their] opinion 'an overstatement of the evidence'" and failed to explain her decision.  (Pl.'s Mem. at 19.)  This argument does not persuade the Court.  As highlighted herein, the ALJ included narrative discussions evaluating the medical evidence, Plaintiff's testimony, and opinion evidence and explaining her findings.  In doing so, she applied correct legal standards. Furthermore, substantial evidence supports her determinations. As discussed below, viewing the ALJ's 22-page decision as a whole, the Court finds no error in the ALJ's evaluation of Dr. Wayne's or Dr. Brengel's opinions.

### 1. *Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017*

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. *See Revisions to Rules Regarding the Evaluation of Medical*

*Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  This framework applies in Plaintiff's case.  The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ."  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source.  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements.  *Id*. §§ 404.1520c, 416.920c(b)-(c).  Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

*2. Evaluation of Dr. Wayne's Opinion*

Dr. Wayne completed a physical assessment for Plaintiff on September 9, 2020.  (R. at 971-72.)  Therein, he opined that: (1) Plaintiff's symptoms "often" impacted her severely enough to interfere with attention and concentration; (2) she could lift and carry 10 pounds occasionally and less than 10 pounds frequently, but never lift and carry more than 20 pounds; (3) she could stand/walk for four hours total and sit for four hours total in an eight-hour workday; (4) she would likely be absent from work once or twice a month; and (5) Plaintiff would require unscheduled breaks every two to four hours during an eight-hour workday.  (R. at 971-72.)  Dr. Wayne also found that Plaintiff had no issues with repetitive reaching, handling, or fingering and could use her hands, fingers, and arms for 100% of the workday.  (R. at 971.)

In considering Dr. Wayne's opinion, the ALJ found it:

> unpersuasive, unsupported, overly restrictive, and an overstatement of the evidence. Likewise, this opinion is inconsistent with the evidence presented at the current hearing level including the assessments of the State agency medical consultants and [Plaintiff] reported activities of daily living, which support the ability to perform light exertional work.

(R. at 29.)  Plaintiff contends the ALJ failed to explain why she found Dr. Wayne's opinion unsupported or inconsistent with the evidence.  In doing so, Plaintiff ignores other portions of the ALJ's decision, including the 10-plus-page discussion of Plaintiff's medical record, persuasiveness of opinion evidence, and evaluation of Plaintiff's activities.  Considering the ALJ's decision as a whole, the Court finds the ALJ sufficiently explained her determinations regarding Dr. Wayne's opinion.

In finding other opinions more persuasive, the ALJ noted that the providers supported their assessments with "observations, clinical findings, testing, and examination" or had otherwise

20

documented support for the same in their summaries.  (R. at 30-32.)  Dr. Wayne's assessment, on

the other hand, contained no accompanying notes or explanations for the conclusions on the form.

(R. at 971-72.)  Thus, the ALJ reasonably found that Dr. Wayne's opinion lacked support.

The ALJ also found that Dr. Wayne's opinion lacked consistency with other evidence,

including the assessments of state medical consultants and Plaintiff's reported daily activities.  (R.

at 29.)  As explained in the ALJ's decision, the ALJ found opinions from state agency medical

consultants to be somewhat persuasive in supporting light exertional limitations with some added

limitations based on additional evidence presented at the hearing.  (R. at 32.)  State agency medical

consultant, Dr. Godwin, reported Plaintiff could lift and/or carry 20 pounds occasionally and 10

pounds frequently (and otherwise had no push or pull limitations in the upper extremities) and

could stand and walk for about six hours and sit for about six hours in an eight-hour workday.  (R.

at 32, 154-55.)   Dr. Humphries, another state agency medical consultant, affirmed the

aforementioned findings of Dr. Godwin.  (R. at 32, 168-69.)  Unlike Dr. Wayne, Drs. Godwin and

Humphries provided explanations for these opinions "documented in their summaries."  (R. at 32,

154-55, 168.)

The ALJ also found Plaintiff's reported daily activities to be inconsistent with Dr. Wayne's

opinion.  These reported daily activities include "performing independent personal care, preparing

simple meals, washing dishes, doing housework, cleaning, vacuuming, doing laundry, making

bracelets, paying bills, driving, shopping by mail, and working part-time" (R. at 22), shopping in

stores, watching television, going outside daily, reading, writing, showering, talking on the phone

or texting, visiting others, going out to eat, and attending medical appointments.  (R. at 23, 25, 34.)

To the extent Plaintiff cites to other evidence considered and deemed unpersuasive by the ALJ,

the Court declines to reweigh conflicting evidence or substitute its judgment for that of the ALJ.

*See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.  Because the ALJ applied the correct legal standards in analyzing Dr. Wayne's medical opinion and substantial evidence supports the ALJ's determinations, the Court finds no error.

### 3. Evaluation of Dr. Brengel's Opinion

Dr. Brengel completed a mental capacity assessment for Plaintiff on September 3, 2020. (R. at 967-69.)  Therein, Dr. Brengel listed Plaintiff's diagnoses as untreated sleep apnea and dysthymia.  (R. at 967.)  He remarked that Plaintiff had an extreme limitation in the ability to sequence multi-step activities, a marked limitation in using reason and judgment to make work-related decisions, a moderate limitation in the ability to recognize a mistake and correct it, or identify and solve problems, and a mild limitation in the ability to follow one- or two-step oral instructions.  (R. at 967.)  As the only support for these findings, Dr. Brengel wrote that Plaintiff "makes mistakes at work."  (R. at 967.)  Dr. Brengel further opined that Plaintiff had a marked limitation in the ability to avoid or ignore distractions at work, moderate limitations in initiating and performing a known task and working a full day without needing more than the allotted rest time, mild limitations in the ability to work at a consistent and appropriate pace or complete tasks in a timely manner and the ability to sustain an ordinary routine and attendance at work, and no limitation in the ability to work closely with others without distracting or interrupting them.  (R. at 968.)  Dr. Brengel did not provide any supporting medical or clinical findings in the space allotted. (R. at 968.) Dr. Brengel noted that Plaintiff had a marked limitation in the ability to make plans independently of others, moderate limitations in managing psychologically-based symptoms and setting realistic goals, a mild limitation in adapting to changes, and no limitations in distinguishing between acceptable and unacceptable work performance, maintaining personal hygiene and appropriate attire at work, and the ability to be aware of normal hazards and take

appropriate cautions.  (R. at 968.)  Dr. Brengel again did not list medical or clinical findings in the space provided.  (R. at 968.)  Lastly, Dr. Brengel opined that Plaintiff had a marked limitation in the ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness, moderate limitations in the ability to handle conflicts with others, understand and respond to social cues, and respond to requests, suggestions, criticism, correction, and challenges, and a mild limitation in the ability to cooperate with others or ask for help.  (R. at 969.) Dr. Brengel failed to include medical or clinical findings in the space provided for support.  (R. at 969.)  When asked to explain why he felt Plaintiff could not manage her own benefits, he wrote: "Needs help."  (R. at 969.)

> The ALJ found Dr. Brengel's opinion:
>
> unpersuasive, unsupported, overly restrictive, and an overstatement of the evidence.  Likewise, this opinion is inconsistent with the evidence presented at the current hearing level including the assessments of the consultative examiner and the initial State agency psychological consultant, which support no more than moderate limitations with the ability to perform unskilled work with the additional limitations issued hereinabove.

(R. at 29.)

Again considering the ALJ's decision as a whole, the Court finds no error in the ALJ's analysis of Dr. Brengel's opinion.  In contrast to other opinions the ALJ found persuasive or somewhat persuasive and which were supported by summaries, observations, clinical findings, testing, or examination (R. at 30-32), Dr. Brengel provided minimal explanation in support of his assessment, and it stated simply that Plaintiff makes mistakes at work or needs help (R. at 967, 969).  The ALJ sufficiently found and explained that this opinion lacked support.  (R. at 29.)

The ALJ also found that Dr. Brengel's opinion lacked consistency with other evidence, including the assessments of the consultative examiner and initial state agency psychological consultant, which the ALJ found generally persuasive.  (R. at 29-30.)  Indeed, Dr. Candido

concluded that Plaintiff could perform simple and repetitive tasks, such as her current job at McDonald's, but would need additional training to achieve mastery.  (R. at 1783-84.)  The ALJ found Dr. Candido's opinion to be generally persuasive, as it was supported by his observations, clinical findings, testing, and examinations and consistent with the evidence that supports moderate limitations in concentration, which limit Plaintiff to simple, unskilled tasks like that of her current employment.  (R. at 30.)  Dr. McClain also concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information and a moderate limitation in concentrating, persisting, or maintaining pace.  (R. at 140, 151.)  The ALJ reiterated Dr. McClain's finding that Plaintiff's "attention [wa]s adequate to perform simple and repetitive work, and she has been able to deal effectively with work related stresses and currently does so on a part time basis."  (R. at 30, 139, 150.)  The ALJ found Dr. McClain's opinion generally persuasive because it was supported by her review of the of the evidence pertaining to Plaintiff's depression and related symptoms and consistent with the evidence that supports moderate limitations in the ability to perform unskilled work.  (R. at 30.)  In contrast with those opinions, the ALJ found Dr. Brengel's opinion unpersuasive in part because it was inconsistent with the record evidence analyzed elsewhere in the opinion "which support no more than moderate limitations with the ability to perform unskilled work."  (R. at 29.)

The ALJ's opinion, when read as a whole, provides sufficient explanation for her determination that Dr. Brengel's opinion lacks support, is inconsistent with the record, and does not persuade.  The Court finds that the ALJ applied the correct legal standards in analyzing Dr. Brengel's medical opinion and that the ALJ's opinion is supported by substantial evidence.

## V.      CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge David J. Novak and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/ _____

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: January 4, 2024